## Farrow and Wife v. Caudill, et al.

(Decided May 18, 1923.)

### Appeal from Magoffin Circuit Court.

1. Mines and Minerals—Equity Will Not Forfeit Lease for Failure to Pay Rent Due to Owner's Fault.—Where lessees under an oil and gas lease were unable to pay the rent when due because lessor's guardian removed from the state, and lessor's whereabouts were unknown, and lessees exerted all reasonable efforts to make the payment by applying for the appointment of a new guardian to whom they did make the payments, though one payment was made after lessor attained his majority which was unknown to the lessees, lessor is not entitled in equity to have the lease forfeited for non-payment of the rent which was due largely to his own fault and that of his guardian, even if he was not, as indicated by some of the evidence, a non-resident at the time the second guardian was appointed, so that the appointment was invalid under Ky. Stats., section 2022, because not made with his consent or on his nomination.

2. Infants—Equity Will Not Allow Infancy to be Used for Perpetration of Fraud.—Though chancery courts are in a sense guardians of infants and will fully protect their legal rights, they will not allow infancy or any other legal disability to be used as a means for the perpetration of fraud, and especially will protect the innocent party, when to do otherwise involved an exception to the fundamental rule not to decree a forfeiture except upon imperative grounds.

3. Guardian and Ward—Infant Lessor Held Required to Appear and Nominate Guardian.—Where an infant had acquired title to

property subject to oil and gas lease and his former guardian had removed from the state so as not to be authorized to receive rentals under the lease, it was the duty of the infant, either to notify the lessees of his age and residence so that they might arrange for the payments of rentals in a legal way, or to appear before the county court and nominate a guardian as required by statute, and he cannot have the lease forfeited because his failure to do so prevented payment of the rentals.

4.  Guardian and Ward—Good Faith Effort to Pay Rentals to Infant Does Not Defeat Legal Liability, Where Payments Were Not Valid.—A good faith effort by oil lessees to pay the rentals due under the lease by having appointed a guardian for the infant owner of the premises and making a payment to him, though it prevents a forfeiture of the lease in equity, does not defeat the legal liability of the lessees for the rentals, where the payments were not valid because the guardian's appointment was illegal and because the infant had attained his majority before the last payment was made.

WHEELER & WHEELER for appellants.

W. R. PRATER, CALLOWAY HOWARD, O'REAR, FOWLER & WALLACE and WM. T. FOWLER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 4, 1918, Willie Perkins and wife executed to Mrs. W. H. Caudill an oil and gas lease whereby the lessee in consideration of thirty dollars cash paid at the time was granted the privilege for a period of five years to explore and drill for oil and gas on a described tract of land in Magoffin county owned at that time by the lessors, which he agreed to to. The usual mining privileges were contained in the lease with certain stipulations relative to the production of gas wells and a royalty of one-eighth of all oil produced, and it was furthermore provided that unless a well was commenced on or before August 4, 1918, six months after the execution of the lease, then it would become forfeited unless the lessee would pay to the lessors a rental of $12.50, which it is claimed by defendants was at the rate of fifty cents per acre, and that the lease should be kept alive by payment of a like sum each six months thereafter until a well was commenced. It will thus be seen that the rental periods for each year were the fourth of Februray and August. Shortly after the lease was executed Perkins and wife sold the land to appellant and plaintiff below, Bruce Farrow, who at that time was only eighteen years

of age. Directly thereafter Charlie Conley, his brother-in-law, was appointed his statutory guardian by the Magoffin county court, but the appointment was not made upon plaintiff's nomination either orally or in writing as prescribed by section 2022 of the Kentucky Statutes, although plaintiff is making no complaint of that fact in this case.

The semi-annual rentals were paid, perhaps the first one to Perkins, and the others up to and including August 4, 1919, to Charlie Conley, the guardian of plaintiff, and who was appointed in the manner indicated. Before the due date of the next installment, February 4, 1920, Conley, the guardian, moved from Kentucky to the state of Ohio. In the meantime defendant, the lessee, had assigned and transferred a one-half interest therein to her co-defendant, E. B. Arnett. Neither of them knew anything of the whereabouts of plaintiff, Farrow, since he, according to his testimony, had been away from Magoffin county practically all the time for about five years, and after he received his deed from Perkins he lived first at Mullins, W. Va., for about seven months, then at Noland, W. Va., for a short while, then at Ashland, Ky., for about eight months, then at Alka, Ky., for about three months, then at Akron, Ohio, for two months, then at New Boston, Ohio, for about eight months, and from there back to Ashland. Defendant did not know his age and as stated they were also ignorant of the place of his residence. After Conley moved to Ohio, the defendants concluded that under the provisions of section 2024 of the statutes the office of guardian was vacant, since that section provides, among other things, that the court may remove a resident guardian and appoint his successor when he moves out of the state and becomes a non-resident thereof. Acting upon the theory that the payment to Conley, under the circumstances, of the rent due February 4, 1920, would be invalid and that a payment to his ward, the plaintiff, would likewise be invalid, even if defendants knew his whereabouts, which they did not according to the undisputed proof, they filed affidavit before the county court in which they stated that Conley had removed from the state, and on the 21st day of January, 1920, he was removed by order of court as guardian for plaintiff and one Sam Patrick was appointed in his place and he qualified and executed bond and the rent due in February of that year was paid to him.

On March 7 thereafter plaintiff became of age, but defendants, being ignorant of that fact and still ignorant of his whereabouts, paid the rent due August 4, 1920, to Patrick. Shortly before the due date of the next semi-annual payment (February 4, 1921), defendants learned of the fact that plaintiff was of age and that he was then residing in Ashland, Kentucky, whereupon they sent to him by registered mail the rent paid to Patrick on August 4, 1920, as well as that to be due on February 4, 1921, but he declined to receive that letter and returned it to defendants. They then called on him at Ashland and tendered to him $25.00 in payment of the rent that was due on August 4, 1920, and that to be due on February 4, 1921, but he declined to accept it, and afterwards brought this equity action to cancel the lease upon certain grounds set out in the petition, the principal one of which was the failure to legally pay the rent according to the stipulations in the lease. Another ground was that the lease had been fraudulently altered, but it was disproven. The issues were made and the testimony developed the facts as we have substantially stated them, and the court on submission of the cause dismissed the petition, from which judgment plaintiff prosecutes this appeal.

It is argued for appellants, (1), that Conley never became a non-resident of the state of Kentucky, but was only temporarily absent therefrom, and that he committed no act authorizing his removal as guardian for plaintiff, but that if he had, then he, as well as his ward, was entitled to notice of his attempted removal, and that the removal order was void in the absence of such notice; (2), that the appointment of Patrick without either the oral or written consent of plaintiff, who was above fourteen years of age, as is provided by section 2022 of the statutes, was likewise void; and (3), that if mistaken in both points (1), and (2), then the power and authority of Patrick to act as guardian *ipso facto* ceased when plaintiff became of age and the payment made to him thereafter on August 4, 1920, was invalid and ineffectual for the purpose of keeping the lease alive.

It is admitted that no demand was ever made of defendants by plaintiff to develop the leased premises by boring for oil, or that a forfeiture would be insisted on for failure to do so, and it is likewise conclusively proven that defendants acted in good faith and did all that they reasonably could to comply with the terms of

the lease by paying the rent on the respective due dates; but, that owing to the fact of their ignorance of the whereabouts of plaintiff, and the removal of Conley to the state of Ohio, there existed no one to whom the rents could be legally paid and, acting upon the advice of counsel, they had Patrick appointed, as hereinbefore stated, and that they paid the August, 1920, installment of rent to him after plaintiff became of age because of the fact that they were ignorant of his age. These facts are mostly admitted and the contested ones are overwhelmingly proven. The question, therefore, is, will equity, under the circumstances, forfeit the lease on the application of plaintiff therefor?

Labored and lengthy discussion is indulged in by attorneys for both sides as to the legal effect of the removal of Conley as guardian for plaintiff and the appointment of Patrick as his successor, and of the payment to the latter of the installment of rent accruing after plaintiff became of age, which discussion is both interesting and instructive. It is, perhaps, true that the appointment of a guardian for a resident ward over fourteen years of age without observing the requirements of the section of the statutes, *supra* (2022), would be void, and it is also most probably true that the authority of a duly and regularly appointed guardian ceases upon the arrival at age of his ward, and that the guardian can do no act thereafter except to settle with his ward. But, if we should concede the correctness of those two legal principles, the question is still to be determined whether equity, under the facts of this case, will decree a forfeiture of the lease as against the defendants who, as we have seen, did all they could reasonably do to comply with the terms of their lease and at a time when the obstructions in the way of a literal compliance were due more to the fault and negligence of the plaintiff than to any acts of omission or commission or their part.

From the testimony it is quite probable that plaintiff was a non-resident of Kentucky when Patrick was appointed, and if so the court had jurisdiction to make the appointment without the consent of or nomination by the ward, although he was over fourteen years of age. (See section 2022 of the statutes.) But, if plaintiff was a resident of the state at that time (a fact very much in doubt from the proof), it would seem that it was his duty, as he had the right to do under the section of the statutes relied on by him, to appear before the court

and make known his wishes upon the subject so that there might be brought into existence some one legally qualified to accept payment for him, and if he should fail to do so and also fail to disclose his whereabouts to defendants so that he might be served with summons on a motion for the appointment of a guardian, he would be in no position to ask equity for a cancellation of the lease as against one who in good faith had done all in his power to comply with the terms of his obligations and to create a situation where he could legally do so. It is true that chancery courts are in a sense guardians of infants in so far as their legal rights will be fully protected, but it is likewise true that equity will not allow infancy nor any other legal disability to be used as a means for the perpetration of fraud, and *a fortiori* will it protect the innocent party when to do otherwise involves an exception to one of its fundamental rules, i. e., to not decree a forfeiture except upon imperative grounds.

In this case plaintiff is insisting that his first appointed guardian and brother-in-law, Conley, was the one to whom all the rentals should have been paid, although the record discloses that Conley himself was appointed contrary to the provisions of section 2022 of the statutes relied on by him, still he seeks to rely on the same section to avoid the payments made to Patrick. We think, under the peculiar circumstances of this case, it was the duty of plaintiff to either notify defendants of both his age and his residence so that they might arrange for the payment of the rentals in a legal way, or he should have appeared before the county court and nominated his guardian according to the provisions of the statutes; and if he failed to do so and because thereof defendants were without any one to whom they could legally make payment, he can not insist upon a forfeiture under the proven facts. There existed no one who could legally receive the payments, and it was within the power of plaintiff to apply to the county judge and have a guardian appointed for him to whom payments could legally be made, or inform defendants of his whereabouts so that they could summon him to appear before the county court for the purpose of appointment of a guardian, and upon his failure to do either he can not insist upon a forfeiture, but he may treat all payments after the removal of Conley as illegally made and recover them in an appropriate action, since although plaintiffs made

them in good faith the person receiving them was without authority to do so, and the obligation to make them was not thereby extinguished.

The error in making the payments was attempted to be corrected by defendants as soon as they learned of it by tendering to plaintiff the respective amounts erroneously paid, which, as we have seen, he declined to accept, and insisted upon a forfeiture of the lease and brought this action for that purpose soon thereafter; but for the reasons stated we do not think he was entitled in equity to the forfeiture, and the trial court having so held, its judgment is accordingly affirmed.